**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| SANTOS GABRIEL MATIAS GUERRA, <br><br> Plaintiff, <br><br> v. <br><br> MARCO TEIXEIRA, *d/b/a Twicegood Drapery Experts*, <br><br> Defendant. | Civil Action No. TDC-16-0618 |

**MEMORANDUM OPINION**

Plaintiff Santos Gabriel Matias Guerra has brought this federal and state wage law case against Defendant Marco Teixeira, alleging that Teixeira failed to pay him overtime wages, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19 (2012), the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401–31 (2016), and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501–09. Guerra has also brought a claim under the Maryland Workplace Fraud Act ("MWFA"), Md. Code Ann., Lab. & Empl. §§ 3-901–20, alleging that Teixeira misclassified him as an independent contractor, and a claim under 26 U.S.C. § 7434, alleging that Teixeira unlawfully issued him an Internal Revenue Service ("IRS") Form 1099 ("1099"), reflecting payments to a contractor, rather than an IRS Form W-2 ("W-2"), reflecting payments to an employee. Pending before the Court are Teixeira's Motion for Summary Judgment, ECF No. 60, and Guerra's Motion for Partial Summary Judgment, ECF No. 64. Having reviewed the briefs and submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the

following reasons, Teixeira's Motion is GRANTED IN PART and DENIED IN PART, and Guerra's Motion is DENIED.

## BACKGROUND

The parties are before the Court on cross-motions for summary judgment but have reached little consensus on what transpired between them. They do agree on the following facts: Teixeira has operated Twicegood Drapery Experts as a sole proprietorship since 2004. Teixeira contracts with drapery and blinds manufacturers to install their products at commercial properties across the mid-Atlantic region. Guerra performed drapery installation work as part of a professional relationship with Teixeira from approximately June 2011 until September 14, 2015. Guerra signed a document entitled an "Independent Contractor Agreement" on March 26, 2012, with a listed effective date of July 21, 2011. Teixeira issued 1099s to Guerra for the years 2011 through 2015, and Guerra filed a federal income tax return in 2012 in which he stated that he was self-employed. The parties otherwise strongly disagree about Teixeira's business model and the role that Guerra played in it.

At his deposition, Teixeira testified that he enters into contracts with manufacturers, who sell their draperies and blinds to commercial entities in a package with installation services. Teixeira agrees to coordinate the installation of the draperies and blinds, which he accomplishes by arranging for installers to hang the products in customers' properties. Teixeira claimed that the drapery installers who perform the work are independent contractors, that he has each of them sign an Independent Contractor Agreement, and that the contractors are free to turn down the jobs that he offers them. The Independent Contractor Agreement requires contractors to carry workers' compensation insurance. Teixeira testified, however, that none of his contractors have purchased their own such insurance, so he purchases it on behalf of the contractors and

subtracts the cost from their pay. He also testified that the contractors perform the work without his instruction or direction, as he is rarely on the job sites, and that they must provide their own tools to perform the installation services. Teixeira does, however, provide some tools and equipment for use, but contractors who use them are charged a rental fee. Although contractors are expected to wear shirts provided by Teixeira which display the Twicegood logo, Teixeira claimed that this requirement applies only when the job site requires some form of identification, and that he does not force contractors to wear the shirts and does not even know if they do wear them.

Teixeira further testified that he has a number of company vehicles and that contractors may arrange to meet at his house and ride together in a company vehicle to and from job sites, but he insisted that the contractors are not required to, and do not always, use these company vehicles to get to work locations. The contractors are instructed to swipe their Twicegood-issued identification cards on an app loaded onto their smart phones whenever they start or finish driving a company vehicle, as well as whenever they arrive at or leave a job site. Teixeira maintains, however, that the use of this electronic tracking system is merely recommended for liability purposes, that he cannot and does not enforce its use, and that he never uses the system to track the contractors' work hours, as he does not pay them by the hour but by the day or by the project. Finally, Teixeira stated that his contractors were advised to report back to him by e-mail, by 8:00 a.m. the next day, on how much work they had completed the previous day, and to provide photographs of the work accomplished. He explained, however, that this practice was only a "guideline" for the contractors. Teixeira Dep. at 312–13, J.R. 79.

Guerra painted a very different picture through his deposition testimony. A Guatemalan immigrant with limited English proficiency and a ninth-grade education, Guerra testified through

an interpreter that he was a day laborer before he met Teixeira on a street corner outside a 7-Eleven in June 2011. According to Guerra, Teixeira promised to train him on drapery installation and offered him $12 an hour in pay. From June 2011 until September 2015, Guerra worked only for Teixeira. Although Teixeira had testified that Guerra sometimes turned down work, Guerra stated that he was not allowed to turn down Teixeira's installation projects and that occasionally when he wanted to take a sick day, Teixeira forced him to work.

Guerra's testimony revealed that Teixeira maintained strict control over his workers. For example, Teixeira had to be on the phone with the workers when motorized blinds were being installed. Guerra had to comply with project deadlines set by Teixeira and provide proof of work completion by submitting photographs to Teixeira. Guerra believed that the electronic tracking system, by which he scanned his identification card through the required app on his smart phone, was also how Teixeira tracked Guerra's working hours in order to pay him. Guerra also testified that he almost always drove a Twicegood vehicle to get to the job site and had to wear the Twicegood uniform at the job site.

Guerra admitted to signing the Independent Contractor Agreement but also stated that he asked Teixeira on multiple occasions to pay him overtime. Every time he broached the topic, Teixeira rebuffed him without explanation. Guerra also understood that he was earning an hourly wage as from time to time Teixeira would call him and tell him that his hourly rate was going up. Guerra never knew how much he would earn, however, because Teixeira would deduct seemingly random amounts from Guerra's paycheck and would not provide an explanation for those deductions when asked.

There are also factual disputes arising from the documentary evidence. Based on posts on Guerra's Facebook profile page, which state that Guerra began working for a company known

as LG Installation in 2010, Teixeira has argued that Guerra was operating that business while working for Twicegood and that Teixeira was therefore contracting with Guerra's business for installation services rather than with Guerra himself. Guerra, however, has testified that he referenced LG Installation in postings showing his work because he aspired to have his own company someday, that he did not form this business until 2017—after he had left Twicegood— and that he then referenced the 2010 date in an attempt to show how experienced he is in drapery installation. In any event, the Independent Contractor Agreement that Guerra signed makes no mention of LG Installation.

Teixeira also notes that Guerra's income tax return for 2012—the only year that Guerra filed a tax return while he was working with Twicegood—states that Guerra was self-employed at the time. But Guerra testified that this tax form was completed by an accountant recommended by Teixeira and that Guerra did not understand what the tax return meant.

Finally, the parties dispute whether Guerra ever worked more than 40 hours a week so as to merit overtime pay at all. Guerra received in discovery and provides as evidence the read-outs from the electronic tracking system that recorded him clocking in and out from December 30, 2012 until August 22, 2015. Based on the times that Guerra clocked in at the beginning of each day and the times that he clocked out for a final time at the end of the day, these records show that Guerra worked 4,912 hours in the relevant time period, of which 2,080 hours should have resulted in overtime pay. Teixeira, however, argues that this calculation includes driving time and unpaid breaks, and that there is no evidence that Guerra was working during all of the hours when he was clocked in.

Guerra has asserted five claims against Teixeira. In Counts I through III, Guerra seeks unpaid overtime pay and enhanced damages under the FLSA, the MWHL, and the MWPCL. In

Count IV, Guerra seeks damages under the MWFA for his misclassification as an independent contractor. In Count V, Guerra asserts a claim for damages under 26 U.S.C. § 7434, because he received 1099s rather than W-2s from Teixeira.

## DISCUSSION

Teixeira argues that he is entitled to summary judgment on the grounds that (1) Guerra was an independent contractor, not an employee, and therefore is not entitled to overtime pay or damages under the FLSA, the MWHL, the MWPCL, or the MWFA; (2) Guerra has provided insufficient evidence that he worked more than 40 hours a week; (3) Guerra's FLSA, MWHL, and MWPCL claims are partially barred by the statute of limitations; (4) Guerra's MWFA claim is time-barred; and (5) Guerra has not asserted a plausible claim for a violation of 26 U.S.C. § 7434. Guerra seeks partial summary judgment on the issues of whether he was an independent contractor or an employee and whether he is entitled to equitable tolling of the statute of limitations.

### I.     Legal Standard

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is

only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49. "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Philip Morris Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997)).

## II. Work Classification

The FLSA and MWHL both require that covered employees receive overtime pay of one and one-half times their regular pay rate. *See* 29 U.S.C. § 207(a); Md. Code Ann., Lab. & Empl. § 3-415(a); *Veney v. John W. Clarke, Inc.*, 28 F. Supp. 3d 435, 441 (D. Md. 2014). Neither statute, however, extends these overtime protections to independent contractors. *See Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006); s*ee also Heath v. Perdue Farms, Inc.*, 87 F. Supp. 2d 452, 456 (D. Md. 2000) (applying the same standard under the FLSA and MWHL to distinguish between protected employees and unprotected independent contractors).

A violation of the MWPCL, in turn, occurs when an employer fails to pay "all wages due for work that the employee performed before the termination of employment," including overtime pay. Md. Code Ann., Lab. & Empl. § 3–505(a); *Peters v. Early Healthcare Giver, Inc.*, 97 A.3d 621, 625–26 (Md. 2014) ("[B]oth the [M]WHL and the [M]WPCL are vehicles for recovering overtime wages."). Therefore, in order to receive the overtime protections of the FLSA and MWHL, and to have a claim for back pay through the MWPCL, Guerra must have been an employee, not an independent contractor, within the meaning of the FLSA.

In *McFeeley v. Jackson Street Entertainment, LLC*, 825 F.3d 235 (4th Cir. 2016), the United States Court of Appeals for the Fourth Circuit held that whether a worker is an employee

or an independent contractor under the FLSA is determined by the "economic realities of the relationship between the worker and the putative employer." *Id*. at 241 (quoting *Schultz*, 466 F.3d at 304). When applying this economic realities test, courts must analyze six factors:

> (1) [T]he degree of control that the putative employer has over the manner in which the work is performed;
> (2) the worker's opportunities for profit or loss dependent on his managerial skill;
> (3) the worker's investment in equipment or material, or his employment of other workers;
> (4) the degree of skill required for the work;
> (5) the permanence of the working relationship; and
> (6) the degree to which the services rendered are an integral part of the putative employer's business.

*Id*. at 241. While "[n]o single factor is dispositive," the "touchstone of the 'economic realities' test is whether the worker is 'economically dependent on the business to which he renders service or is, as a matter of economic [reality], in business for himself.'" *Id*. (quoting *Schultz*, 466 F.3d at 304).

Hence, the lived reality of the worker is paramount and supersedes any categorization that a business may have made of its workers, even when the parties have signed a putative independent contractor agreement and the business routinely issues 1099s, rather than W-2s. *See McFeeley*, 825 F. 3d at 239, 241 (holding that exotic dancers were employees even though they had signed a contract that labeled them as "independent contractors"); *Randolph v. PowerComm Constr., Inc.*, 7 F. Supp. 3d 561, 569 n.5 (D. Md. 2014) (noting that "the manner in which Plaintiffs were classified for tax purposes" is not "dispositive in determining their status as employees").

Here, the parties fundamentally disagree about the economic realities of their working relationship and put forward divergent—and flat out contradictory—facts in support of their positions. Teixeira describes a relationship in which Guerra was free to come and go as he

pleased, accept projects or turn them down, use his own tools or rent tools from Teixeira, hire or not hire employees to work with him through his separate company, LG Installation, follow or not follow Twicegood's uniform and daily reporting guidelines, and perform the assigned work as he thought best, with little to no input from Teixeira.  Guerra, in contrast, asserts that Teixeira exercised a high degree of control over him, assigning projects that Guerra had to complete, imposing deadlines, requiring him to wear a Twicegood uniform and to submit daily work reports, providing training, and closely supervising the manner in which the work was performed.  Guerra also testified that Teixeira provided a work vehicle and tools for his workers, and that he and Teixeira had a longstanding relationship for four years in which Guerra worked only for Teixeira, having no separate contractor business and certainly never hiring any employees for himself.

The documentary evidence does not resolve the discrepancies in this contradictory deposition testimony.  As relevant here, the parties have provided the (1) Independent Contractor Agreement; (2) Guerra's 2012 tax filing; (3) a Vehicle Sharing Agreement that Guerra signed in order to drive the Twicegood cars; (4) records showing when Guerra used the cell phone app to clock in and out, thereby showing when he used a Twicegood vehicle or entered or exited a job site; (5) Twicegood's worker's compensation insurance application; (6) screenshots of Guerra's Facebook profile and postings, which list his start date at LG Installation as August 5, 2010 and include photographs, posted between April 26, 2014 and August 16, 2015, in an album titled "LG Installation Window Treatments"; and (7) a handful of brief emails between the parties regarding Twicegood work assignments.  These documents do not definitively establish the economic reality of the parties' business relationship.  Although Teixeira consistently labeled Guerra as an "independent contractor" in his paperwork, Teixeira's classification choice does not

control the legal question of whether Guerra was an employee under the FLSA. *Randolph*, 7 F. Supp. 3d at 569 n.5. Guerra's tax filing, in which he is described as "self-employed," was prepared by an accountant identified by Teixeira, and Guerra has testified that he did not understand the contents of that submission. Finally, although Guerra's Facebook post seemingly shows that Guerra started LG Installation in 2010, before he began working with Teixeira, Guerra testified that he made that post after he left Twicegood, Maryland state records confirm that LG Installation was formed in 2017, and none of the Twicegood paperwork relating to Guerra refers to LG Installation.

Nor has either party provided sworn testimony from other witnesses that bolsters their respective deposition testimony. Although each party produced an affidavit from Santiago Aquino, another Twicegood installer, the two affidavits almost completely contradict each other.

In short, there remain multiple genuinely disputed issues of material fact, many of which cannot be resolved without an assessment of the credibility of witnesses, which therefore preclude summary judgment on Guerra's status as an employee or independent contractor. *See, e.g.*, *Sill v. AVSX Techs., LLC*, 243 F. Supp. 3d 664, 670–71 (D.S.C. 2017) (finding that a genuine issue of material fact prevented summary judgment on whether plaintiffs were employees or independent contractors). Both Motions for Summary Judgment will be denied on this issue. Because of the many remaining factual disputes, the Court will also deny summary judgment on whether Guerra qualified as an employee under the MWFA. *See* Md. Code Ann., Lab. & Empl. § 3-903(c) (providing the definition of "employee" under the MWFA).

### III.   Evidence of Overtime Hours

Teixeira further argues that, even if Guerra were an employee rather than an independent contractor, summary judgment should be granted in his favor on Guerra's FLSA, MWHL, and

MWPCL claims because Guerra has failed to provide evidence that he ever worked more than 40 hours in a week. Teixeira has similarly sought summary judgment on Guerra's MWFA claim, again arguing that Guerra failed to show that he worked overtime hours and therefore failed to demonstrate that he suffered the kind of economic damages recoverable under the MWFA. *See* Md. Code Ann., Lab. & Empl. § 3-911.

The FLSA and MWHL place the burden to maintain employment records, including the tally of hours worked and wages paid, upon the employer rather than the employee. 29 U.S.C. § 211(c) ("Every employer . . . shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him[.]"); Md. Code Ann., Lab. & Empl. § 3-424 ("Each employer shall keep, for at least 3 years, in or about the place of employment, a record of: (1) the name, address, and occupation of each employee; (2) the rate of pay of each employee; (3) the amount that is paid each pay period to each employee; (4) the hours that each employee works each day and workweek[.]"); *see Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) ("[I]t is the employer who has the duty . . . to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed."). In arguing that Guerra's claims fail because he does not provide proof of his hours worked, Teixeira improperly attempts to shift his statutory recordkeeping obligations onto Guerra.

An employee "has the burden of establishing the hours he claims to have worked and the work he claims to have performed for which he was not paid." *McLaughlin v. Murphy*, 436 F. Supp. 2d 732, 737 (D. Md. 2005). However, if an employer does not keep records or fails to produce them in litigation, "an employee has carried out his burden if he proves that he has in


fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson*, 328 U.S. at 687. "The burden then shifts to the employer" to negate the reasonable inferences drawn from the employee's evidence. *Id.* Because courts may award approximate damages to employees, employees do not have to "prove each hour of overtime work with unerring accuracy or certainty." *Pforr v. Food Lion, Inc.*, 851 F.2d 106, 108 (4th Cir. 1988); *see Anderson*, 328 U.S. at 688.

Here, Guerra has provided the read-outs from the Twicegood electronic tracking system, which recorded every time he swiped in and out of work vehicles and job sites. In his deposition, Guerra testified that while he occasionally forgot to check in or out, or was unable to do so because his phone did not have a signal, he generally used this system throughout the time he worked for Teixeira. In light of these examples of instances when Guerra did not check in or check out every time he worked, the data from the tracking system would provide only an approximation of the hours that he worked. Nevertheless, this data, combined with his deposition testimony on his consistent use of the electronic tracking system, is sufficient to support a reasonable inference that Guerra worked the identified hours. *See Randolph*, 7 F. Supp. 3d at 572–73. Because this tracking data shows that Guerra worked more than 40 hours per week on many occasions, Teixeira's Motion for Summary Judgment on Guerra's FLSA, MWHL, and MWPCL claims will be denied on this issue. This tracking data is similarly sufficient to show that Guerra suffered economic damages for purposes of his MWFA claim. Teixeira's Motion for Summary Judgment will be denied on that claim as well.

**IV.     Statute of Limitations**

Teixeira argues that at a minimum, summary judgment should be entered in his favor on any alleged violations of the FLSA, MWHL, and MWPCL that occurred before December 10, 2012, because these claims are barred by a three-year statute of limitations. Guerra responds that he is entitled to summary judgment on this issue because the statute of limitations should be equitably tolled to allow him to recover damages stretching back to June 2011, when he first started working with Twicegood, because Teixeira did not post a description of employees' FLSA rights in his place of business.

Although the FLSA has a two-year statute of limitations, the limitations period is extended to three years if the defendant's violation is "willful," 29 U.S.C. § 255(a), specifically, if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute," *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). The MWHL and MWPCL both have a three-year statute of limitations. Md. Code Ann., Cts. & Jud. Proc. § 5-101 (2011). A claim for overtime pay accrues "each time the employer issues a paycheck in violation of the FLSA." *Orellana v. Cienna Props., LLC*, Case No. JKB-11-2515, 2012 WL 203421, at *3 (D. Md. Jan. 23, 2012) (citing *Nealon v. Stone*, 958 F.2d 584, 591 (4th Cir. 1992)).

Equitable tolling is "a discretionary doctrine that turns on the facts and circumstances of a particular case [and] does not lend itself to bright-line rules." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000) (quoting *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999)). "[A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." *Harris*, 209 F.3d at 330. Generally, equitable tolling is available when (1) "the

plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant," or (2) "extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." *Cruz v. Maypa*, 773 F.3d 138, 146 (4th Cir. 2014) (quoting *Harris*, 209 F.3d at 330)). The Fourth Circuit has held that the failure of an employer to comply with the federal regulatory requirement to conspicuously "post and keep posted a notice explaining the [FLSA]," 29 C.F.R. § 516.4, is the kind of wrongful conduct by the defendant that can justify equitably tolling the statute of limitations. *Cruz*, 773 F.3d at 146–47.

Guerra argues that Teixeira's failure to post information about the FLSA in his place of business merits equitable tolling of the statute of limitations in this case. The Court is not presently prepared to grant summary judgment to Guerra on this issue. The requirement to post a notice of FLSA rights applies only to businesses "employing any employees subject to the [FLSA's] minimum wage provisions." 29 C.F.R. § 516.4. As discussed, multiple genuine disputes of material fact prevent a determination at this time that Guerra was an employee under the FLSA. Accordingly, it is premature to conclude that § 516.4 applied to Teixeira.

At the same time, the possibility that the lack of a posted notice could warrant equitable tolling prevents the Court from granting summary judgment to Teixeira on the statute of limitations. Where "tolling based on lack of notice continues until the claimant retains an attorney or obtains actual knowledge of [the employee's] rights," *Cruz*, 773 F.3d at 147, Teixeira argues that Guerra admitted that he had actual knowledge of his rights as early as 2012, based on his deposition testimony that beginning around the summer of 2012, he made several requests to Teixeira that he receive overtime pay, which Teixeira denied. However, while these statements show that Guerra was aware that overtime pay might be available, they do not definitively establish that Guerra was aware that he had a legal right, under federal or state law, to be paid at

an overtime rate. The record is not sufficiently developed on whether and when Guerra learned of his legal right to overtime pay to reach a conclusion on whether the lack of a posted notice of FLSA rights warrants equitable tolling. *See Cruz*, 773 F.3d at 147 (remanding for a determination on equitable tolling when the record did not identify when the plaintiff first retained a lawyer or learned of her rights under the FLSA). The Court will therefore deny Teixeira's Motion for Summary Judgment as to the FLSA, MWHL, and MWPCL statutes of limitations and deny Guerra's Cross Motion for Summary Judgment as to equitable tolling.

## V.     MWFA

Teixeira also argues that the three-year statute of limitations has expired for Guerra's MWFA claim. *See* Md. Code Ann., Lab. & Empl. § 3-911(b). The MWFA provides that "[a]n employer may not fail to properly classify" an individual, which occurs "when an employer-employee relationship exists . . . but the employer has not classified the individual as an employee." Md. Code Ann., Lab. & Empl. § 3-903(a), (b). The MWFA statute of limitations provision states: "An action filed under this section shall be filed within 3 years after the date the cause of action accrues." *Id.* § 3-011(b). Teixeira asserts, without authority, that MWFA claims accrue on the day that the misclassification first occurs and do not renew each day that the misclassification continues or each time that a paycheck based on that misclassification is issued. Therefore, as Guerra was allegedly first misclassified when he began working for Teixeira in June 2011, Teixeira argues that the MWFA claim expired in June 2014.

The MWFA, enacted in 2009, is a relatively new statute. Neither the parties nor the Court has identified case law addressing when an MWFA claim accrues. The statute, however, renders unlawful not the act of classifying an employee, but the act of "fail[ing] to properly classify" an employee. Md. Code Ann., Lab. & Empl. § 3-903(a). Thus, the claim that a

violation occurs only at the beginning of employment, at the time that a worker is classified, is inconsistent with the plain language of the statute. Where the failure to properly classify is the unlawful act, the cause of action must fairly be construed as continuing throughout the period of failure, or as one that recurs whenever the person was not properly classified as an employee, such as when that employee receives a 1099, or when a payment is made that does not include amounts to which an employee would be entitled. *Cf. DePaola v. Clarke*, 884 F.3d 481, 486–87 (4th Cir. 2018) (noting that under the "continuing violation" doctrine, which may apply where there is a continuing harm, wrong, or series of acts or omissions, the statute of limitations on a prisoner's claim for deliberate indifference to serious medical needs does not begin to run until the adequate treatment is actually provided); *Nealon v. Stone*, 958 F.2d 584, 591 (4th Cir. 1992) (holding that an Equal Pay Act claim accrues each time a paycheck is issued with a lower wage based on discrimination); *Figueroa v. District of Columbia Metro. Police Dep't*, 633 F.3d 1129, 1133–34 (D.C. Cir. 2011) (concluding that FLSA claims accrue each time there is a failure to pay earned overtime pay). Therefore, if Guerra should have been classified as an employee rather than as an independent contractor, the MWFA violation would continue up until Guerra's final day of employment, September 14, 2015. Because Guerra's Complaint was filed within three years of that date, the Court will deny Teixeira's Motion as to the MWFA claim.

### VI.     26 U.S.C. § 7434

Finally, Teixeira argues that he is entitled to summary judgment on Guerra's claim under 26 U.S.C. § 7434 because even if Guerra should have received a W-2, improper classification as an independent contractor is not actionable under § 7434. Guerra did not respond to this argument in his memorandum in opposition to Teixeira's Motion for Summary Judgment.

Section 7434(a) provides that: "If any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a) (2012). In his Amended Complaint, Guerra asserts that Teixeira issued willfully fraudulent tax documents by giving him 1099s when he should have received W-2s, thereby incurring liability under this provision.

No United States Court of Appeals has addressed whether § 7434 creates a cause of action in that scenario, but the United States District Court for the Eastern District of Virginia, when faced with a similar set of facts, concluded that it does not. After performing a lengthy analysis of the statute's text and legislative history, the court determined that "Congress's goal in enacting § 7434 was to give redress to taxpayers aggrieved by the filing of information returns that fraudulently misrepresent *the amount paid* to the taxpayer." *Liverett v. Torres Advanced Enterprise Solutions, LLC*, 192 F. Supp. 3d 648, 655 (E.D. Va. 2016) (emphasis added). Furthermore, "neither unambiguous text, statutory context, nor congressional purpose support [the] position that [the] alleged willful filing of Form 1099s instead of Form W-2s is actionable under § 7434(a)." *Id.* This Court agrees with the *Liverett* court's thorough analysis and concludes that § 7434 is not a proper vehicle by which to challenge the misclassification of an employee as an independent contractor. *See id.* at 651–65; *see also Simms v. UNATION, LCC*, 292 F. Supp. 3d 1286, 1297–99 (M.D. Fla. 2018) (adopting *Liverett*'s analysis of § 7434). Particularly when Guerra has abandoned this claim by failing to address it in opposing Teixeira's Motion, the Court will grant summary judgment to Teixeira on this claim. *See Mentch v. Eastern Sav. Bank, FSB*, 949 F. Supp. 1236, 1247 (D. Md. 1997) (finding that the plaintiff had

abandoned a claim "by failing to address that claim in her opposition to [the defendant's] motion for summary judgment, or to offer clarification in response to [defendant's] reply brief").

## CONCLUSION

For the foregoing reasons, Teixeira's Motion for Summary Judgment, ECF No. 60, is GRANTED IN PART and DENIED IN PART, and Guerra's Motion for Partial Summary Judgment, ECF No. 64, is DENIED. A separate Order shall issue.

Date: August 8, 2018

THEODORE D. CHUANG
United States District Judge