## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **SANTOS GABRIEL MATIAS GUERRA,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **Civil Action No.  TDC-16-0618** |
| | * | |
| **MARCO TEIXEIRA,** | * | |
| | * | |
| **Defendant.** | * | |

**\*\*\*\*\*\***

## REPORT AND RECOMMENDATION

Pending before the Court is Plaintiff Santos Gabriel Matias Guerra's Motion for Attorneys' Fees ("Plaintiff's Motion"), ECF No. 95.  Pursuant to 28 U.S.C. § 636, and Local Rule 301, the Honorable Theodore D. Chuang referred this matter to the undersigned for the making of a Report and Recommendation concerning the award of attorneys' fees and costs.  To date, no opposition has been filed.  The Court has reviewed Plaintiff's Motion, the accompanying memorandum, and the applicable law.  No hearing is deemed necessary.  Loc. R. 105.6 (D. Md.).  For the reasons stated herein, I recommend an award of attorneys' fees to Plaintiff in the amount of $138,037.78 and costs in the amount of $9,162.73.

## I.    Factual and Procedural Background

Plaintiff prevailed in the underlying proceeding after a three-day bench trial.  Order of J. (Jan. 25, 2019), ECF No. 94.  Plaintiff was employed by Defendant between 2011 and 2015.  Trial J. Mem. Op. 2, 7 (Jan. 25, 2019), ECF No. 93.  Defendant owns Twicegood Drapery Experts ("Twicegood"), a company that "contracts with drapery and window blinds manufacturers to install their products at commercial properties across the mid-Atlantic region."

*Id.*  Plaintiff worked for Defendant installing drapery.  *Id.*  Defendant claimed that Plaintiff was an independent contractor.  *Id.* at 7.  Although Plaintiff signed a contract with Defendant stating that Plaintiff was an independent contractor, Plaintiff understood little English and the contract was never explained to him.  *Id.* at 6–7.  Defendant paid Plaintiff hourly for his work, assigned jobs to Plaintiff, provided additional instruction and guidance based on a particular job, set deadlines for the work to be completed, and checked in on Plaintiff when he was at a worksite.  *Id.* at 2–3.  Defendant also required Plaintiff send him a job report after he completed each job.  *Id.* at 3–4.  Plaintiff's uniform, identification badge, and equipment were all provided by Defendant and/or bore Twicegood's logo on them.  *Id.* at 4.  Additionally, Defendant paid Plaintiff by direct deposit twice a month into his bank account at hourly rates of between $12.00 and $16.50.  *Id.* at 5–6.  Plaintiff never received paystubs for his payment.  *Id.* at 6.  Plaintiff also regularly worked more than 40 hours a week but was never paid overtime.  *Id.*

Plaintiff commenced this proceeding in Circuit Court for Montgomery County, Maryland, on December 10, 2015.  *See* Notice of Removal, ECF No. 1.  On March 3, 2016, Defendant removed the action to this Court pursuant to 28 U.S.C. §§ 1441, *et seq.*  *Id.*  Among the claims Plaintiff raised were failure to pay overtime wages under the Fair Labor Standards Act ("FLSA")[1] and the Maryland Wage and Hour Law ("MWHL").[2]  Pl.'s Compl. ¶¶ 18–31, ECF No. 2.  Plaintiff also claimed unpaid wages under the Maryland Wage Payment and Collection Law ("MWPCL").[3]  *Id.* at ¶¶ 32–37.  On March 18, 2016, Plaintiff filed an Amended Complaint

---

[1] 29 U.S.C. §§ 201, *et seq.*

[2] Md. Code Ann., Lab. & Empl. §§ 3-401, *et seq.*

[3] Md. Code Ann., Lab. & Empl. §§ 3-501, *et seq.*

and added claims under the Maryland Workplace Fraud Act ("MWFA").[4]  Plaintiff claimed

Defendant misclassified him as an independent contractor and unlawfully issued him an Internal

Revenue Service ("IRS") Form 1099 ("1099") rather than an IRS Form W-2 ("W-2"), in

violation 26 U.S.C. § 7434.  Pl.'s Am. Compl. ¶¶ 38–50, ECF No. 11.

On April 28, 2016, Defendant filed a Motion to Dismiss for Failure to State a Claim or, in

the Alternative, for Summary Judgment.  ECF No. 19.  A hearing was held on November 9,

2016.  ECF No. 27.  The next day, Judge Chuang issued an order denying Defendant's motion.

ECF No. 28.  In the fall of 2017, after discovery was completed, the parties filed cross-motions

for summary judgment.  ECF Nos. 60, 64.  On August 8, 2018, Judge Chuang issued an order

granting in part and denying in part Defendant's Motion for Summary Judgment and denying in

full Plaintiff's Motion for Summary Judgment.  ECF No. 69.  In his opinion, Judge Chuang

granted Defendant's Motion for Summary Judgment on Plaintiff's claim under a theory based on

26 U.S.C. § 7434.  Mem. Op. Regarding Parties Cross-Mots. for Summ. J. ("Summ. J. Mem.

Op.") 17–18, ECF No. 68.  The case was then set for trial to commence on December 10, 2018.

ECF No. 71.

At trial, Plaintiff advanced claims for: (1) unpaid overtime under the FLSA; (2) unpaid

overtime under the MWHL; (3) unpaid wages under the MWPCL; and (4) associated damages

under MWFA.  Trial J. Mem. Op. 9.  After three days of testimony, Plaintiff prevailed on all four

claims.  Order of J., ECF No. 94.  Judge Chuang found that Plaintiff was an employee of

Defendant and not an independent contractor.  *Id.* at 24, 25.  Ultimately, Judge Chuang awarded

Plaintiff actual overtime compensation that he was due for the weeks he worked over 40 hours,

damages for all deductions Defendant took for worker's compensation insurance and tools and

---

[4] Md. Code Ann., Lab. & Empl. §§ 3-901, *et seq.*

equipment, and mandatory double damages under the FLSA or MWHL. Trial J. Mem. Op. 31–35. The amounts awarded were limited to the period between December 10, 2012 and September 14, 2015. *Id.* at 39–40. The parties were then ordered to jointly submit to the Court a calculation of damages based on the Court's detailed instructions. *Id.*

On March 4, 2019, the parties filed a joint calculation of damages totaling $44,302.50. Joint Calculation of Pl.'s Damages ("Joint Calculation"), ECF No. 108. The Court then entered judgment in favor of Plaintiff for that amount. ECF No. 109.

Plaintiff now seeks attorney's fees in the amount of $149,839.00 and costs in the amount of $9,162.73. Mem. in Supp. of Pl.'s Mot. for Att'ys' Fees ("Pl.'s Mem.") 4, 10, ECF No. 111. Defendant has filed no opposition.[5]

## II.    Legal Standard

Courts in the United States follow the "American Rule" when it comes to the award of attorney's fees. In essence, a prevailing party must pay its own attorney's fees unless there is a fee shifting statute or a contractual obligation. *See Myers v. Kayhoe*, 391 Md. 188, 207–08 (2006). "To properly calculate an attorney's fees award, courts undertake a three-step process: (1) determine a lodestar figure; (2) subtract fees for hours spent on unsuccessful claims unrelated to successful ones; and (3) evaluate the degree of success of the plaintiffs." *Randolph v. PowerComm Constr., Inc.*, No. 18-1728, 2019 WL 3072555, at *4 (4th Cir. July 11, 2019) (per curium). In order to recover for attorney's fees, counsel must submit appropriate materials supporting his or her claim. This typically includes time records and affidavits regarding the services provided. Since reasonableness is the touchstone for the award of fees, the party

---

[5] The Court notes that since Plaintiff filed the instant motion, Defendant's legal counsel withdrew representation and Defendant is now representing himself *pro se* in this matter. *See* Order Granting Leave to Strike Appearance of Counsel (Mar. 5, 2019), ECF No. 110.

seeking the award of fees "must provide 'detailed records' that specify 'the services performed, by whom they were performed, the time expended thereon, and the hourly rate charged.'" *Bel Air Plaza Ltd. P'ship v. Ross Dress for Less, Inc.*, Civ. No. CCB-14-2533, 2016 WL 3440191, at *1 (D. Md. Jun. 23, 2016) (citing *Rauch v. McCall*, 134 Md. App. 624, 639 (2000) (citation omitted)). When a claim for attorney's fees is filed in the federal court in Maryland, there is an extra layer of complexity arising from the Court's adoption of its Rules and Guidelines for Determining Attorneys' Fees in Certain Cases (the "Guidelines"). Loc. R., App. B (D. Md. Dec. 1, 2018). The Guidelines address the format for filing the fee request, the details that should be included in time records, and the requirement for the submission of quarterly statements. *Id.* at App. B.1. They also provide direction regarding what is compensable and non-compensable time. *Id.* at App. B.2. For the convenience of counsel, these Guidelines also list a range of hourly rates that this Court finds to be presumptively reasonable. *See id.* at App. B.3; *see also Gonzales v. Caron*, Civ. A. No. CBD-10-2188, 2001 WL 3886979, at *2 (D. Md. Sept. 2, 2011) ("[G]enerally this Court presumes that a rate is reasonable if it falls within these ranges.").[6]

Once a fee request is submitted, it becomes the responsibility of the party challenging the request to articulate the areas where an award would be inappropriate. "[T]he Court will not review any challenged entry in the bill unless the challenging party has identified it specifically and given an adequate explanation for the basis of the challenge." *Thompson v. U.S. Dept. of Hous. and Urban Dev.*, No. Civ. A. MJG-95-309, 2002 WL 31777631, at *10 (D. Md. Nov. 21,

---

[6] Plaintiff complied with the Guidelines' requirements for formatting his motion for fees. Plaintiff also submitted documentary support for his motion, including a memorandum of law, two declarations by each of the lead attorneys on his case, time records that have hourly breakdowns and details for the tasks completed, a summary of the fees and costs incurred during this litigation, and a declaration by an outside attorney attesting to the reasonableness of Plaintiff's request. *See* Pl.'s Mot.

2002).  However, in circumstances where there is a *pro se* defendant the Court may afford some leniency to their arguments challenging a motion for fees.  *See Sakala v. Milunga*, Civ. A. No. PWG-16-0790, 2018 WL 5724010, at *4 (D. Md. Oct. 31, 2018); *see also, e.g.*, *Harrison-Belk v. Rockhaven Cmty. Care Home*, C/A No. 3:07-54-CMC, 2008 WL 2952442, at *2 (D.S.C. July 29, 2008), *as amended* (July 31, 2008), *aff'd sub nom. Harrison-Belk v. Barnes*, 319 F. App'x 277 (4th Cir. 2009) (reviewing an attorney's fees motion under the twelve-factor test even when a *pro se* defendant's opposition simply stated plaintiff failed to meet the requirements but "provide[d] no discussion or elaboration as to why he believe[d] this is so").

## III.    Analysis

Under the FLSA, a prevailing plaintiff is entitled to reasonable attorney's fees and costs. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.").  The MWHL also contains a mandatory fee-shifting clause.  Md. Code Ann., Lab. & Empl. § 3-427(d)(1)(iii) ("If a court determines that an employee is entitled to recovery in an action under this section, the court shall award to the employee . . . reasonable counsel fees and other costs.").  In contrast, the MWPCL and MWFA contain fee-shifting clauses that permit, but do not require a court to award reasonable attorneys' fees and costs to a prevailing plaintiff.  Md. Code Ann., Lab. & Empl. § 3-507(b)(1) ("[T]he court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs."); Md. Code Ann., Lab. & Empl. § 3-911(c)(3) ("[T]he court may award each individual . . . reasonable counsel fees and other costs of the action.").  Accordingly, a threshold question for this Court is whether Plaintiff is a "prevailing party."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  A plaintiff is a "prevailing party" for the purpose of attorney's fees if the plaintiff succeeds "on any significant

issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Id.*

Here, Plaintiff prevailed on all of his remaining four claims after a three-day bench trial before

Judge Chuang. Order of J., ECF No. 94. As a result, Plaintiff recovered $44,302.50 in damages.

ECF No. 109. Therefore, Plaintiff is a "prevailing party" entitled to attorney's fees under the

aforementioned statutes. *See Hensley*, 461 U.S. at 433.

While Plaintiff may be entitled to attorney's fees, the reasonableness of the award is left

to the sound judgment of the Court. As previously discussed, the Fourth Circuit has identified a

three-step process to use when assessing fee shifting cases. Defendant has not submitted an

opposition to Plaintiff's Motion. While ordinarily this would mean there is little left for the

Court to do other than review Plaintiff's Motion for reasonableness, the fact that Defendant is

currently representing himself *pro se* compels the Court to give Plaintiff's Motion a more

thorough review. *See Harrison-Belk*, 2008 WL 2952442, at *2.

### A.      Lodestar Amount

The "lodestar figure is the "number of hours reasonably expended on the litigation

multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433; *Grissom v. Mills Corp.*, 549

F.3d 313, 320 (4th Cir. 2008). When determining what is reasonable, federal courts in the

Fourth Circuit have followed the precedent from the Fifth Circuit set forth in *Johnson v. Georgia

Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The *Johnson* decision requires the Court

to consider twelve factors in determining appropriate relief:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions
> raised; (3) the skill required to properly perform the legal services rendered; (4)
> the attorney's opportunity costs in pressing the instant litigation; (5) the
> customary fee for like work; (6) the attorney's expectations at the outset of the
> litigation; (7) the time limitations imposed by the client or circumstances; (8) the
> amount in controversy and the results obtained; (9) the experience, reputation and
> ability of the attorney; (10) the undesirability of the case within the legal
> community in which the suit arose; (11) the nature and length of the professional

relationship between attorney and client; and (12) attorneys' fees awards in
similar cases.

*Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978) (superceded by statute with

respect to the Truth In Lending Act).  After calculating the lodestar amount, the Court must then

subtract for labors spent on unsuccessful claims that are unrelated to the successful ones.

*Randolph v. Powercomm Constr., Inc.*, 715 F. App'x 227, 230 (4th Cir. 2017).  Finally, the Court

is to take into account the degree of success obtained and award some percentage of the

remaining amount based on that assessment.  *Johnson v. City of Aiken*, 278 F.3d 333, 337 (4th

Cir. 2002) (citing *Hensley*, 461 U.S. 424).

### i.  Reasonable Hourly Rate[7]

Plaintiff seeks compensation for attorney's fees according to the following rates:

| Name | Role | Years of Experience | Rate |
|------|------|---------------------|------|
| Michael Amster | Attorney (Lead) | ~10 | $350.00 |
| Mariusz Kurzyna | Attorney (Lead) | ~14 | $350.00 |
| J. Barrett Kelly | Attorney | 4–6 | $275.00 |
| Jason D. Friedman | Attorney | < 5 | $275.00 |
| Roy Lyford-Pike | Attorney | < 5 | $225.00 |
| Anthony G. Bizien | Attorney | < 5 | $225.00 |
| Milton Segarra | Attorney | ~3 | $205.00 |
| Ariel Anzora | Paralegal | Unspecified | $135.00 |
| Michelle Patino | Paralegal | Unspecified | $135.00 |
| Keron Cruz | Paralegal | Unspecified | $135.00 |
| Vanessa Zelaya | Paralegal | Unspecified | $135.00 |
| Crystal Avalos | Paralegal | Unspecified | $135.00 |

Michael K. Amster Declaration ("Amster Declaration") ¶¶ 1, 3–8 (Mar. 15, 2019), Pl.'s Mem.,

ECF No. 111-1, Ex. 1; Declaration of Mariusz Kurzyna ("Kurzyna Declaration") ¶¶ 2, 12 (Mar.

---

[7] The following section explicitly discusses two of the Johnson factors: factor five - "the
customary fee for like work;" and factor nine - "the experience, reputation and ability of the
attorney[s]."  *Barber*, 577 F.2d at 226 n.28.

15, 2019), Pl.'s Mem., ECF No. 111-2, Ex. 2. In support of his request, Plaintiff submitted the Amster and Kurzyna Declarations, which set forth the education, skill, experience, and billing rates for the lawyers and paralegals who provided legal services to Plaintiff. *Id.*

Michael K. Amster is a named partner at Zipin, Amster and Greeberg, LLC ("Zipin Firm"), and was the attorney-in-charge of Plaintiff's case from the outset of the representation through the decision on the parties' cross-motions for summary judgment. Amster Decl. ¶¶ 1–2, 15. Mr. Amster has approximately 10 years of legal experience. *Id.* at ¶ 1. Plaintiff seeks reimbursement for Mr. Amster's time at a rate of $350.00 per hour. *Id.* This is at the high end of the range of the Guidelines for someone with Mr. Amster's years of experience. *See* Loc. R., App. B.3(c) (stating the range of rates for attorneys with between 9 and 15 years of experience is between $225.00 and $350.00 per hour). However, given Mr. Amster's role as the attorney-in-charge of this matter, the Court finds this amount to be reasonable.

Mariusz Kurzyna is a senior counsel with Zipin Firm and has been the attorney-in-charge of Plaintiff's case from the decision on the parties' cross-motions for summary judgment to present. Kurzyna Decl. ¶¶ 7, 13. The bulk of Mr. Kurzyna's practice has been focused on wage and hour cases and that he has at least fourteen years of experience. *See id.* at ¶¶ 2, 10. Mr. Kurzyna states that he has litigated over thirty wage and hour cases. *Id.* at ¶¶ 10–11. Plaintiff seeks reimbursement for Mr. Kurzyna's time at a rate of $350.00 per hour. *Id.* at ¶ 12. As this is within the range of the Guidelines for someone with Mr. Kurzyna's years of experience, and in light of Mr. Kurzyna's role in the case and years of experience, the Court finds this rate to be reasonable. Loc. R., App. B.3(c).

J. Barrett Kelly is an associate at Zipin Firm whose date of admission to the bar was not provided in the filings. Amster Decl. ¶ 3. However, the Court notes that Mr. Kelly graduated

from law school in 2012 and therefore appears to have between 4 and 6 years of experience. *Id.* The Court also notes that the requested rate of $275.00 per hour falls within the Guideline's range for someone with between 5 and 8 years of experience. Loc. R., App. B.3(b) (stating the range of rates for attorneys with between 5 and 8 years of experience is between $165.00 and $300.00 per hour). It also overlaps with the Guideline's range for attorneys with less than 5 years of experience. *Id.* at App. B.3(a) (stating the range of rates for attorneys with less than 5 years of experience is between $150.00 and $225.00 per hour). Accordingly, the Court finds the requested rate to be reasonable.

Jason D. Friedman is an associate at Zipin Firm who has been practicing law since 2012. Amster Decl. ¶ 4. While Plaintiff's filings did not specify the hourly rate at which Mr. Friedman billed for his time, the time records indicate that he billed at a rate of $275.00 per hour. *See* Attorney Time Records, Pl.'s Mem., ECF No. 111-3, Ex. 3. However, this rate exceeds the highest amount in the range outlined in the Guidelines for an individual who has no more than 5 years of experience. *See* Loc. R., App. B.3(a). Accordingly, the Court recommends reducing the rate by which Mr. Friedman's hours are reimbursed to $225.00 per hour.

Roy Lyford-Pike is an associate at Zipin Firm who graduated from law school in 2015. Amster Decl. ¶ 5. While the date of his admission is not stated, evidence available suggests that Mr. Lyford-Pike has less than 5 years of experience. *Id.* Plaintiff asserts that Mr. Lyford-Pike is entitled to rates of $260.00 per hour, however, Plaintiff states that he voluntarily reduced the rate billed to $225.00. Pl.'s Mem. 4. As this is within the range of the Guidelines for someone with Mr. Lyford-Pike's years of experience, the Court finds this rate to be reasonable. Loc. R., App. B.3(a).

Anthony G. Bizien is an associate at Zipin Firm who graduated from law school in 2016. Amster Decl. ¶ 6. While the date of his admission to a bar is not provided, Mr. Bizen cannot have more than 5 years of experience based on the information available. *Id.* Plaintiff asserts that Mr. Bizien is entitled to rates of $260.00 per hour, however, Plaintiff states that he voluntarily reduced the rate billed to $225.00 per hour. Pl.'s Mem. 4. As this is within the range of the Guidelines for someone with Mr. Bizien's years of experience, the Court finds this rate to be reasonable. Loc. R., App. B.3(a).

Milton Segarra is an attorney at Zipin Firm who has been barred since February 2016. Amster Decl. ¶ 7. Plaintiff seeks reimbursement for Mr. Segarra's time at a rate of $205.00 per hour. *Id.* Given Mr. Segarra's approximately 3 years of experience, the Court finds this rate is reasonable. *See* Loc. R., App. B.3(a).

Plaintiff also seeks reimbursement for the time of five (5) paralegals who worked on the case. Amster Decl. ¶ 8. Plaintiff did not provide information about each paralegal's individual experience level, however, the Court notes that all of their time was billed at a rate of $135.00 per hour. *Id.* This amount is within the range outlined in the Guidelines, and therefore the Court finds this rate is reasonable. Loc. R., App. B.3(f) (stating the range of rates for paralegals and law clerks is between $95.00 and $150.00 per hour).

In his affidavit, Mr. Amster opines that "the fair market rate for Zipin Firm's services to be in excess of the rates sought by Plaintiff." *Id.* at 9. Mr. Amster bases this belief on his "experience in the field" and his "review[] [of] awards of attorneys' fees in employment-related cases tried in [Maryland]." *Id.* Plaintiff also submitted a declaration by Jonathon Gould, an attorney who practices in a separate law firm. *See* ECF No. 111-5, Ex. 5. Mr. Gould states that while he does not practice in Maryland, he is "reasonably well acquainted with the prevailing

market rates in the District of Columbia and Maryland." *Id.* at ¶ 4. He confirms that the rates for Mr. Kurzyna and Mr. Amster are reasonable. *Id.* at ¶ 7.

With one exception, the fee rates that Plaintiff seeks to recover are all within the range of rates outlined in the Guidelines and are therefore deemed presumptively reasonable in the eyes of this Court. *See Gonzales*, Civ. No. CBD-10-2188, 2001 WL 3886979, at *2. The Court is of the view that the Guidelines are appropriate and representative of a broader range of fees charged by practitioners appearing in the federal court in Maryland. Accordingly, and for the reasons stated above, the Court recommends the rates of compensation be as follows:

| Name | Role | Years of Experience | Rate |
|---|---|---|---|
| Michael Amster | Attorney (Lead) | ~10 | $350.00 |
| Mariusz Kurzyna | Attorney (Lead) | ~14 | $350.00 |
| J. Barrett Kelly | Attorney | 4–6 | $275.00 |
| Jason D. Friedman | Attorney | 1–4 | $225.00 |
| Roy Lyford-Pike | Attorney | < 5 | $225.00 |
| Anthony G. Bizien | Attorney | < 5 | $225.00 |
| Milton Segarra | Attorney | ~3 | $205.00 |
| Ariel Anzora | Paralegal | Unspecified | $135.00 |
| Michelle Patino | Paralegal | Unspecified | $135.00 |
| Keron Cruz | Paralegal | Unspecified | $135.00 |
| Vanessa Zelaya | Paralegal | Unspecified | $135.00 |
| Crystal Avalos | Paralegal | Unspecified | $135.00 |

### ii. Reasonable Hours Expended

As previously noted, in support of his motion Plaintiff submitted time records that detail the tasks completed during the pendency of this litigation. The time records are broken down by task and include the date the task was completed, the amount of time it took, the timekeeper's name, a brief description of the task, and the phase of litigation. In total, Plaintiff seeks to recover for 515.3 hours of work completed by his attorneys. Pl.'s Mem. 4. To determine whether the amount of time expended was reasonable, the Court will apply the remaining *Johnson* factors.

*1.(1) Time and Labor Expended.*

In Plaintiff's Memorandum, counsel argue that the amount of time they expended upon this litigation was reasonable.  Pl.'s Mem. 3–4, 6.  They attest that they "reviewed the billing statement generated in this matter and cut any excessive or unnecessary work performed."  Pl.'s Mem. 3.

The Court has reviewed the hourly entries submitted along with this Motion.  The Court notes that this matter has lasted for over three years, involved several motions, including a motion to dismiss and cross motions for summary judgment, and was ultimately resolved after a three-day bench trial.  The bulk of the hours listed in the time records appear to have been expended upon hearings and trial preparation, which is in accordance with the procedural history of this matter.  *Id.* at 4.  While one of Plaintiff's claims was denied at summary judgment stage, Plaintiff was successful on all four of the remaining claims raised at trial.

In addition to the number of hours, the Court reviews Plaintiff's fee request to ensure it complies with not only the applicable case law, but also the Local Rules laid out in the Guidelines.  To begin with, there is a general prohibition in the Guidelines against "double billing" and in particular against double billing for certain tasks like depositions.[8]  The Court finds no entries that appear to bill for two team members' time for the same task.  *See* Loc. R., App. B.2.  Plaintiff only seeks to recover for the time the most senior attorney spent attending depositions, hearings, and trial.  *See id.*  Plaintiff further complied with the requirement

---

[8] "Double billing" in the context of attorney's fees refers to situations where more than one attorney bills for services doing the same task on behalf of the same party.  *See, e.g.*, Loc. R., App. B.2(b) (stating "[o]nly one lawyer from each separately represented party shall be compensated for attending depositions" absent a valid reason for sending more than one).

concerning billing for travel time as no entry for travel exceeds the two-hour time limit for either direction. *Id.* at App. B.2(e).

### 2.(2) The Novelty of the Issues.

In reviewing the number of hours expended, the Court also considers whether any of the issues presented were novel or particularly difficult to adjudicate. Although the standard violations of wage and hour claims usually involve straightforward issues concerning an employer's failure to pay an employee sufficiently or timely, a case can also have unique issues that arise out of the circumstances surrounding the controversy. While the instant case was a typical wage and hour dispute, there was a threshold inquiry into whether Plaintiff was an independent contractor or an employee. This factor did add an element of complexity to the litigation, the Court does not find it to be so novel that it would require extraordinary time put into the litigation. The Court also notes that Plaintiff's counsel does not seek an upward adjustment of his fee award based on this factor. Pl.'s Mem. 6.

### 3.(3) The Skill Required to Properly Perform the Legal Services Rendered.

The lack of novel or difficult issues in this case also indicates that there was no need for a particularly unique or specialized skill to prosecute the case on Plaintiff's behalf. However, Plaintiff's counsel appear to be sufficiently experienced in litigating wage and hour cases to properly represent Plaintiff's interests in the matter in an efficient manner. *See* Pls.' Mem. 7 (stating the Zipin Firm is "highly experienced in the employment law field, particularly so with FLSA cases"). The Court finds no indication to the contrary.

*4.(6) The Attorney's Expectations at the Outset of the Litigation. (4) The*
*Attorney's Opportunity Costs in Pressing the Litigation, and (10) The*
*Undesirability of the Case*

Plaintiff's counsel state that they were hired on a contingency basis. *Id.* at 9. Plaintiff's

counsel further acknowledges that they were aware of the "risk of not recovering any fees or

costs if they did not prevail at trial" due to this contingency agreement. *Id.*

The Court notes that cases with individual wage and hour claims are generally less

desirable to attorneys as the potential recoverable amount is likely much smaller than a class

action. *See Harrison-Belk v. Rockhaven Cmty. Care Home*, 2008 WL 2952442, at *3. Cases

taken on contingency, although a common practice, are even less desirable as there is no

guarantee of payment or reimbursement of expenses. While FLSA and other wage and hour

claims generally have a fee-shifting clause in the statute, an attorney must still expend resources

prior to receiving any payment. As stated in their memorandum, Plaintiff's counsel incurred

opportunity costs to take on Plaintiff as a client because it took up time they could spend on other

cases. Pl.'s Mem. 9. Further, counsel incurred three-years of costs and fees all while they were

aware of the risk that they might not recover anything.[9] *Id.* Nonetheless, the Court finds that

these factors do not warrant any adjustment for the amount of fees sought by Plaintiff at this

stage in the assessment as these concerns are typically encountered in wage and hour claims.

*5. (8) The Amount in Controversy and the Results Obtained*

It is worth noting at this point that while the Fourth Circuit has deemed it mandatory to

apply all the *Johnson* factors at the first stage of this assessment,[10] this raises a concern that an

---

[9] While Plaintiff's counsel confirms that they "incurred significant opportunity costs because this matter prevented them from pursuing other matters," they also state that they are not seeking an upward adjustment based on this factor. Pl.'s Mem. 7.

[10] *See Randolph*, 715 F. App'x 227, 230 (citing *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013)) ("To ascertain what is reasonable in terms of hours expended and the rate charged, the

award could be reduced twice for the same deficiency. Specifically, the eighth *Johnson* factor requires the Court to consider "the amount in controversy and the results obtained" when assessing the initial lodestar amount. *Id.* After determining the lodestar amount and subtracting fees for hours spent on unsuccessful claims, the Fourth Circuit then directs the Court to "award some percentage of the remaining amount, depending upon the degree of success enjoyed by the plaintiff." *McAfee*, 738 F.3d 81, 88. While the percentage awarded is not supposed to be simply proportional to the amount initially sought and the ultimate award, that difference is a "primary consideration" when ascertaining the degree of success. *Doe v. Chao*, 435 F.3d 492, 506 (4th Cir. 2006). With this concern in mind, I will follow the direction of the Fourth Circuit and apply all the *Johnson* factors when assessing the lodestar amount. However, the ultimate impact of the degree of success in this case will be considered in step three of the analysis.

At the outset of this litigation, Plaintiff sought unpaid wages and overtime from a period of approximately four years. Trial J. Mem. Op. 2, 7. While Plaintiff did not state an exact amount of damages he sought, he alleged that he frequently worked over 40 hours a week and acknowledged that he received some payment. *Id.* at 6. Plaintiff also sought liquidated and treble damages for Defendant's failure to pay him timely. Pl.'s Compl. ¶¶ 18–37. Further, since Plaintiff and Defendant disagreed on whether Plaintiff was an employee or an independent contractor, Defendant's position was that Plaintiff had been fully compensated. Pl.'s Am. Compl. ¶¶ 38–50. After over three years of litigation, the denial of one of his claims, and three days of trial, the Court found on Plaintiff's behalf on all counts. *See* Order of J. Following the detailed decision of Judge Chuang, the parties submitted a joint statement of damages amounting

---

court is bound to apply the factors set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).").

to $44,302.50.  Joint Calculation, "Calculations of Damages per Court Instructions," ECF No. 108-1, Ex. 1.  As instructed by the Court, this amount represents only the time Plaintiff worked in the three-year period prior to filing the instant proceeding, however it does include liquidated damages.  *Id.*  However, it is clear Plaintiff enjoyed significant success on the merits of his case. Accordingly, the Court finds no reason at this stage in the assessment to adjust Plaintiff's initial loadstar amount based upon this factor.

### 6. *(12) Attorneys' Fees Awards in Similar Cases*

Finally, the twelfth of the *Johnson* factors requires the Court look at attorney's fees awarded in similar cases for reference.  *Barber*, 577 F.2d at 226 n.28.  Here, Plaintiff's award in damages represents a little less than one-third the amount Plaintiff is now seeking in attorneys' fees.  This amount is proportionally similar to the attorneys' fees awarded in similar cases.  *See, e.g.*, *Lipenga v. Kambalame*, 219 F. Supp. 3d 517, 525-26, 532 (D. Md. 2016) (awarding the plaintiff on default judgment $31,471.08 under the MWHL for a three-year period of employment where the plaintiff received some payment); *see also, e.g.*, *Almendarez v. J.T.T. Enterprises Corp.*, Civ. No. JKS 06-68, 2010 WL 3385362, at *1, 8 (D. Md. Aug. 25, 2010) (awarding $84,058.00 in attorney's fees in a case where only three of eight plaintiffs prevailed after a jury trial and were awarded a total of $13,200.00, which included liquidated damages).

### iii. Initial Loadstar Amount

Accordingly, and in consideration of the *Johnson* factors discussed,[11] the Court

recommends that an initial lodestar amount of $150,216.50[12] calculated as follows:[13]

| Name | Hours | Rate | Total |
|---|---|---|---|
| Michael Amster | 121.5 | $350.00 | 42,525.00 |
| Mariusz Kurzyna | 124.1 | $350.00 | 43,435.00 |
| J. Barrett Kelly | 178.7 | $275.00 | 49,142.50 |
| Jason D. Friedman | 25.8 | $225.00 | 5,805.00 |
| Roy Lyford-Pike | 0.7 | $225.00 | 157.50 |
| Anthony G. Bizien | 9.4 | $225.00 | 2,115.00 |
| Milton Segarra | 12.0 | $205.00 | 2,460.00 |
| Ariel Anzora | 4.9 | $135.00 | 661.50 |
| Michelle Patino | 1.1 | $135.00 | 148.50 |
| Keron Cruz | 10.2 | $135.00 | 1,377.00 |
| Vanessa Zelaya | 15.7 | $135.00 | 2,119.50 |
| Crystal Avalos | 2.0 | $135.00 | 270.00 |
| **Total** | **506.1** | | **$150,216.50** |

## B. Reducing the Hours and Fees Spent on Unsuccessful, Unrelated Claims

After determining the lodestar amount, the Court must subtract any fees expended upon

unrelated claims that were ultimately unsuccessful. "When all claims involve a common core of

---

[11] In considering the factors laid out in the *Johnson* case, there are a couple that are not significant to this case. These include: factor 7 - "the time limitations imposed by the client or circumstances;" and factor 11 - "the nature and length of the professional relationship between attorney and client." *Barber*, 577 F.2d at 226 n.28. Plaintiff's counsel attest that these factors did not affect their representation. *See* Pl.'s Mem. 8 (stating that there were "[no] unusual time limitations" in this case); *id*. at 9 (stating that they had no prior relationship with Plaintiff outside the case). The Court therefore finds that these factors would have little to no effect on the amount of fees Plaintiff should be entitled to recover.

[12] This amount has been reduced by $1,290.00, representing the difference between the hourly rate claimed for Mr. Friedman and his hourly rate as determined by this Court.

[13] Plaintiff states that the total amount of fees he is requesting is $149,839.00. The Court has reviewed the Time Records submitted along with Plaintiff's Motion and find that the total amount comes to $150,216.50. There is no explanation for this difference. Rather than attempt to discern how or why Plaintiff seeks to be reimbursed $377.50 less than his Time Records show was spent on the litigation, the Court will make its own calculations and then subtract the $377.50 at the very end of the assessment.

facts much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Randolph*, 715 F. App'x 227, 230 (citing *Brodziak v. Runyon*, 145 F.3d 194, 197 (4th Cir. 1998) (alterations, ellipsis, and internal quotation marks omitted)). Therefore, where hours spent on unsuccessful claims can be "identified and separated, the court will subtract them." *Andrade v. Aerotek, Inc.*, 852 F. Supp. 2d 637, 642 (D. Md. 2012). Where hours benefited both successful and unsuccessful claims, "the court will grant those hours 'reasonably expended' on the [successful] claim and exclude those that exceed a 'reasonable expend[iture]' on the prevailing claims." *Id.*

In *Jackson v. Estelle's Place, LLC*, the plaintiffs originally brought 13 claims and sought class status but ended up settling as individual plaintiffs and on only four claims, leaving nine claims "abandoned." 391 F. App'x 239, 241 (4th Cir. 2010). The Fourth Circuit affirmed the district court's decision to reduce the lodestar amount by 25% due to the number of claims the plaintiffs did not prevail on and the low amount recovered compared to what plaintiffs originally sought. *Id.*

Here, Plaintiff originally filed his claims in Maryland Circuit Court before Defendant removed it to this Court. Plaintiff then amended his complaint to include two additional claims, one under 26 U.S.C. § 7434 and the other under the Maryland Workplace Fraud Act. Pl.'s Am. Compl. ¶¶ 38–50. After surviving a motion to dismiss and discovery, Judge Chuang granted Defendant's Motion for Summary Judgment on Plaintiff's 26 U.S.C. § 7434 claim. Summ. J. Mem. Op. 17–18. While the time records do not clearly distinguish between hours spent on individual claims, there were at least some hours spent on this unsuccessful claim. Therefore, I recommend reducing the fees awarded by $360.00, representing a reduction of half of the number of hours Mr. Friedman put into amending the complaint to include the unsuccessful

claim.[14]  I also recommend deducting 5% from the total amount of attorneys' fees to be awarded

for the period between March 16, 2016 and August 8, 2018,[15] representing a reduction for the

amount of time and labor expended upon the 26 U.S.C. § 7434 claim up until it was denied on

summary judgment.  The total number of hours expended within that period is as follows:

| Name | Hours | Rate | Total |
|---|---|---|---|
| Michael Amster | 116.0 | $350.00 | 40,600.00 |
| Mariusz Kurzyna | 15.6 | $350.00 | 5,460.00 |
| J. Barrett Kelly | 0.0 | $275.00 | 0.00 |
| Jason D. Friedman | 12.0 | $225.00 | 2,700.00 |
| Roy Lyford-Pike | 0.7 | $225.00 | 157.50 |
| Anthony G. Bizien | 15.7 | $225.00 | 3,532.50 |
| Milton Segarra | 178.1 | $205.00 | 36,510.50 |
| Ariel Anzora | 0.7 | $135.00 | 94.50 |
| Michelle Patino | 9.4 | $135.00 | 1,269.00 |
| Keron Cruz | 0.0 | $135.00 | 0.00 |
| Vanessa Zelaya | 0.0 | $135.00 | 0.00 |
| Crystal Avalos | 0.0 | $135.00 | 0.00 |
| **Total** | **506.1** | | **$90,324.00** |

Therefore, reducing that amount by 5% comes to a total reduction of $4,516.20.  Accordingly,

the award should be reduced to $145,700.30.

### C.    Awarding a Percentage Based on the Degree of Success

"At step three, after determining the lodestar amount and subtracting for fees related to

unsuccessful claims, 'the court should award some percentage of the remaining amount,

depending on the degree of success enjoyed by the plaintiff.'"  *Randolph*, 2019 WL 3072555, at

*4 (quoting *McAfee*, 738 F.3d 81, 88), *as amended* (Jan. 23, 2014)); *Johnson v. City of Aiken*,

---

[14] According to the Time Records, Mr. Friedman spent 3.6 hours on entries with tasks relating to the Amended Complaint.  The Court will therefore deduct 1.8 hours of Mr. Friedman's time from the award.

[15] In the time records submitted, these dates are the first entry where the amended complaint is mentioned and the entry on the date of Judge Chuang's decision on the parties' cross-motions for summary judgment.

278 F.3d 333, 337. "Indeed, the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Doe*, 435 F.3d at 506. The degree of success is measured by two reference points, namely the amount sought at the outset of the litigation and the damages and relief awarded. The Supreme Court has "reject[ed] the proposition that fee awards . . . should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers." *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986); *see also Nigh v. Koons Buick Pontiac GMC, Inc.*, 478 F.3d 183, 190 (4th Cir. 2007) (holding that courts may not "reflexively reduce fee awards whenever damages fail to meet a plaintiff's expectations in proportion to the damages' shortfall"). Rather, the difference is just one of many factors to consider. *City of Riverside*, 477 U.S. at 574; *see, e.g.*, *Randolph*, 2019 WL 3072555, at *4 (reversing a district court's decision awarding an amount of attorney's fees where the court "failed to account for both the utterly unsuccessful plaintiffs and the meager victories"). Nonetheless, the Fourth Circuit has stated that the Court must give "primary consideration to the amount of damages awarded as compared to the amount sought" in order to "constrain a court's discretion in setting an award." *Doe*, 435 F.3d at 506 (internal quotations and citations omitted). Further, "[t]he comparison should be with the relief sought, not the relief most important to the plaintiff. The court must therefore view the entirety of the suit objectively." *Western Insulation, LP v. Moore*, 362 F. App'x 375, 381 (4th Cir. 2010) (citations, internal quotations, and emphasis omitted).

In *Andrade v. Aerotek*, the plaintiffs sought $287,909.00 in fees. 852 F. Supp. 2d 637, 642. In that action, the plaintiffs were pursuing claims under the FLSA for a national class but won only around $14,000.00 in back pay for eight individual plaintiffs' "off-the-clock" claims. *Id.* at 639. The plaintiffs in *Andrade* had originally pursued "misclassification claims" as well as

the "off-the-clock" claims.  *Id.*  As the misclassification claims were ultimately unsuccessful, the district court reduced the fees billed during discovery by half.  *Id.* at 643.  The district court then reduced the overall fee award by 25% to reflect the relatively low degree of success.  *Id.* at 644.

In *Jackson v. Estelle's Place,* the plaintiffs settled with defendants "early on" for amounts ranging from $430.00 to $12,471.34.  391 F. App'x at 240–41.  In doing so, the plaintiffs "abandoned" nine (9) of the original thirteen (13) claims they brought.  *Id.* at 241.  The Fourth Circuit affirmed the district court's decision to reduce the lodestar amount by 25% due to the number of claims plaintiffs did not prevail on and the low amount recovered compared to what plaintiffs originally sought.  *Id.*  The amount of fees ultimately awarded in *Jackson* was $36,000.00, representing approximately three times more than the largest amount an individual plaintiff received and over twice the total amount recovered by all plaintiffs.  *Id.* at 240–41.

It should also be noted that "attorneys' fees awards may 'substantially exceed [ ] damages' in FLSA cases."  *Atkins v. Sunbelt Rentals, Inc.*, Civ. No. PWG-14-1717, 2016 WL 3647610, at *4 (D. Md. June 30, 2016) (listing cases and determining an award of $95,400 in fees was reasonable where plaintiff settled his FLSA claim for $30,000 after two-years of litigation but before trial commenced); *see also, e.g.*, *Ekeh v. Montgomery Cty.*, No. JKS-12-2450, 2016 WL 3523685, at *6 (D. Md. June 28, 2016) (awarding $31,970.50 in attorneys' fees where plaintiff prevailed on two of three years-worth of overtime claims amounting to $7,344.00).

As already noted above, while the starting amount is unclear from the pleadings, Plaintiff was neither "utterly unsuccessful" nor was Plaintiff's victory "meager."  In fact, other than losing one claim for which he sought $5,000.00, Plaintiff was successful on all of his claims.  Further, this victory came after attempts at mediation and a three-day bench trial.  Accordingly, I

find Plaintiff enjoyed a significant degree of success in light of staunch opposition. The only loss Plaintiff had was the Court not awarding him treble damages. In light of that, I recommend a modest reduction of fees amounting to 5% of the total amount to avoid any windfall to Plaintiff's counsel. *Butler v. Directsat USA, LLC*, No. CV DKC 10-2747, 2016 WL 1077158, at *6 (D. Md. Mar. 18, 2016) ("Fee awards should be adequate to attract competent counsel, but should not produce a windfall to attorneys.").

At the end of the day, the Court's calculations are as follows: First, Mr. Friedman's rate is reduced to $225.00 per hour for the reasons outlined above. Next, to prevent awarding Plaintiff for the labor and hours spent on the unsuccessful claim, I recommend reducing Mr. Friedman's hours spent drafting and researching the amended complaint by half; I further recommend deducting 5% from the award for the period of time the unsuccessful claim was pending before this Court, which brings the award to $145,700.30. Finally, applying the modest downward adjustment of 5% to reflect the measure of success obtained, and subtracting the $377.50 discussed above, the net fees to be awarded are $138,037.78.

## IV. Costs

Plaintiff also seeks to recover $9,162.73 for costs and fees incurred while litigating this proceeding. *See* Expense Records, Pl.'s Mem., ECF No. 111-4, Ex. 4. Plaintiff has submitted a list of the items for which he is seeking reimbursement. These include costs for service of process and subpoenas ($910.00), filing fees ($165.00), depositions and transcript fees ($3,571.05), fees for interpreters ($3,765.00), mediation fees ($400.00), and attorney mileage and parking ($166.99). *Id*. The Court notes that Plaintiff has not supported this request with copies of receipts or affidavits detailing exactly what the money was spent on. However, "[g]enerally, reasonable out-of-pocket expenses (including long-distance telephone calls, express and overnight delivery services, computerized online research, and faxes) are compensable at

actual cost." Loc. R., App. B.4(a). Mileage is also something the Guidelines state will be reimbursed according to the government mileage rate applicable at the time. *Id.* at App. B.4(b). Plaintiff also seeks reimbursement for $186.69 in witnesses' attendance fees. Courts in the past have awarded witness fees in attorney's fee requests. *See McFeeley v. Jackson Street Entertainment, LLC*, 2016 WL 4269042, Civ. A. No. DKC-12-1019, *4 (D. Md. Aug. 15, 2016) (awarding plaintiff $2,806.67 for expert witness fees). Therefore, I recommend reimbursing Plaintiff the requested amount of $9,162.73 for costs and fees incurred while litigating this proceeding.

## V.    Conclusion

In light of the factors to be considered under *Johnson v. Georgia Highway Express, Inc.*, and the degree of success obtained by Plaintiff, it is my recommendation that Plaintiff be awarded attorneys' fees in the amount of $138,037.78 and reimbursed for $9,162.73 in costs.

August 20, 2019                                  _____/s/_____
                                                 Charles B. Day
                                                 United States Magistrate Judge

CBD/clc